WETHERELL, J.,
concurring in result.
I agree based on the case law cited in the majority opinion that this case must be reversed and remanded for a new trial as a result of the fundamentally erroneous jury instructions pertaining to the issue self-defense, which was the central issue in this case.
I write separately to emphasize that the facts summarized in the majority opinion describe the shooting and the events leading up to it in the light most favorable to Appellant. The jury also heard testimony that painted Appellant as the aggressor during the incident and directly contradicted Appellant’s version of the events, including her all-important claim that she only fired the gun because her husband *1190 charged at her in a rage while threatening to Mil her. It was the prerogative of the jury to determine which version of events to believe and, by its verdict, it appears that the jury rejected Appellant’s version of events.[5]
*1191 The same will be true if Appellant is retried upon remand: the jury will have to resolve the conflicts in the evidence and determine whether Appellant is guilty of the crimes charged (or a lesser included offense) or whether her actions were justified in the name of self-defense. But the question as to whether Appellant is entitled to immunity from prosecution under the Stand Your Ground law is no longer open for debate because that issue was definitively resolved against Appellant after a full and fair evidentiary hearing in a ruling that has now been affirmed by this court. See footnote 1, supra.
With these observations, I concur in the disposition of this case.

. The trial court likewise rejected Appellant’s version of events when it denied her claim of immunity under the Stand Your Ground law after making the following relevant findings:
On August 1, 2010, the Defendant shot at or near Rico Gray Sr. [and his two sons]. The Defendant had not been living in the marital home for the two months leading up to the shooting. On the evening of July 31, 2010, the Defendant drove herself to the marital home and parked in the garage, closing the garage door after parking her vehicle. The Defendant stayed the night in the marital home. The next morning, on August 1, 2010, Rico Gray Sr. arrived at the marital home with his two sons [] and the children entered the home through the garage door. Rico Gray Sr. made the family breakfast and nothing went awry.
After breakfast, the Defendant went into the master bedroom. Before entering the bathroom, the Defendant handed her phone to Rico Gray Sr. to show him pictures of their newborn baby [], who was still in the hospital. At that point, the Defendant went into the master bathroom while Rico Gray Sr. looked through the phone. While going through the phone, Rico Gray Sr. observed texts from the Defendant to her ex-husband Lincoln Alexander prompting Rico Gray Sr. to question whether the newborn baby was his. At this point, Rico Gray Sr. opened the bathroom door to confront the Defendant regarding the texts. A verbal argument ensued between the Defendant and Rico Gray Sr. For this reason, Rico Gray Sr. stepped out of the bathroom and yelled for his sons to put their shoes on because they were leaving. Rico Gray Sr. returned to the bathroom and demanded that the Defendant explain the texts and the verbal argument continued. During the verbal argument Rico Gray Sr. stood in the doorway to the bathroom and the Defendant could not get around him. Either Rico Gray Sr. moved from the doorway or the Defendant pushed around him to exit the bathroom. Rico Gray Sr. moved to the living room where his children were. Subsequently, the Defendant emerged from the master bedroom and went into the garage where her car was parked. The Defendant testified she was trying to leave the residence but could not get the garage door to open. (The Court notes that despite the Defendant's claim she was in fear for her life at that point and trying to get away from Rico Gray she did not leave the house through the back or front doors which were unobstructed. Additionally, the garage door had worked previously and there was no evidence presented to support her claim.) The Defendant then retrieved her firearm from the glove box of the vehicle. The Defendant returned to the kitchen with the firearm in her hand and pointed it in the direction of all three Victims. Rico Gray Sr. put his hands in the air. The Defendant shot at Rico Gray Sr., nearly missing his head. The bullet traveled through the kitchen wall and into the ceiling in the living room. The Victims fled the residence and immediately called 911. The Defendant stayed in the marital home and at no point called 911. The Defendant was arrested on the date of the incident.
The Defendant posted bail prior to arraignment and was ordered by the Court and signed a document through Pretrial Services stating she was to have no contact with the Victims in the instant case. However, the Defendant continued to have contact with the Victims in this case, more specifically with Rico Gray Sr. Prior to Rico Gray Sr.’s deposition, the Defendant and Rico Gray Sr. discussed what he should say at deposition.
Shortly after Rico Gray Sr.'s deposition, the Defendant drove to Rico Gray Sr.'s new house where his two children [ ] were staying (not the Defendant’s home). While there, the Defendant physically attacked Rico Gray Sr., causing injury to Rico Gray Sr.’s face. Again, Rico Gray Sr. immediately called 911 after the incident and the Defendant did not. The Defendant was arrested on new charges and her bond was revoked.
[[Image here]]
There is insufficient evidence that the Defendant reasonably believed deadly force was needed to prevent death or great bodily harm to herself, another or to prevent the commission of a forcible felony. During the date in question, the Defendant alleged that while *1191 in the bathroom Rico Gray Sr. pushed her, and the bathroom door hit her in the leg when it swung open. Per the Defendant’s own testimony, she did not suffer serious bodily injury as a result of the altercation that took place in the bathroom. Further, after Rico Gray Sr. exited the master bedroom, the Defendant intentionally passed by the Victims and entered the garage where she immediately armed herself and proceeded back into the home. This is inconsistent with a person who is in genuine fear for his or her life.
After weighing the credibility of all witnesses and other evidence, this Court finds that the Defendant has not proved by a preponderance of the evidence that she was justified in using deadly force in defense of self. Hence, the Defendant has not met her burden of establishing her right to immunity as a matter of fact or law.
(emphasis added).